UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON PUGH,<br><br>    Plaintiff,<br><br>v.<br><br>BERKS COUNTY BOARD OF ELECTIONS,<br><br>    Defendant. | Civil Action No. 5:25-CV-03267 |

**MOTION FOR A SPEEDY DECLARATORY JUDGMENT HEARING, FOR A PRELIMINARY INJUNCTION, AND OTHER RELIEF**

NOW COMES Plaintiff, Brandon Pugh, by and through undersigned counsel, who hereby submits this Motion under Fed. R. Civ. P. 1, 16, 26, 57, and 65 and the Court's inherent power to control its own docket.

**GROUNDS FOR RELIEF**

In this civil rights case under 42 U.S.C. § 1983, there's a world of difference between reasonable regulations which prevent a cluttered election ballot and those which thwart political parties from nominating any candidate at all for public office. Brandon Pugh is a candidate for Mayor of the Borough of Lyons, Berks County, and is asking the Court to declare unconstitutional Section 1405 of the Pennsylvania Election Code (25 P.S. § 3155) as applied to Pugh's facts and circumstances and seeks prospective injunctive relief. That statute requires write-in candidates in a Primary Election to receive a minimum of 10 write-in ballots to be certified as and declared the nominee for a municipal office and placed on the official ballot for the Municipal Election. Id. (last sentence); see also, 25 P.S. § 2872.1(36) (prescribing 10 signatures for nomination petitions for municipal office). Time is of the essence and the need for discovery is limited because the facts are simple: Brandon Pugh is a Republican elector in Lyons Borough, Pennsylvania. On the May

1

20, 2025 Primary, Pugh was a write-in candidate for Mayor of Lyons Borough in what was colloquially called an "Empty Primary," i.e., no other candidate had filed a nomination petition for such office. [Exhibit A, Berks County Bd. of Elections, Official Republican Municipal Primary Ballot, Lyons Borough]. Pugh received five write-in ballots for Mayor, which was the highest plurality of votes cast, specifically, five out of nine (or 55.6% of votes cast). [Exhibit D, Berks County Bd. of Elections, 2025 Municipal Primary, Write-in Name Selection (Lyons Brough Republican Primary)]. One of those votes was cast by Pugh himself. Lyons Borough is a very small jurisdiction, where 41 ballots were cast in the Republican Primary out of 122 electors enrolled in the Republican Party. [Exhibit C, Berks County Bd. of Elections, 2025 Municipal Primary, Precinct Summary at 777 (June 6, 2025)].

On June 6, 2025, the Defendant, exercising its authority under the Pennsylvania Election Code, cumulated Pugh's five write-in ballots but denied his request to be certified as and declared the Republican nominee because of the operation of Section 1405 of the Election Code (25 P.S. § 3155) that he did not receive at least 10 write-in ballots. [Exhibit E, Berks County Bd. of Elections, Meeting Minutes at 4 (Item xxix) (June 6, 2025)]. During that same meeting, the Defendant then certified the results of the Primary, showing no Republican nominee (and no Democratic nominee) for the office of Mayor of Lyons Borough. [Exhibit B, Berks County Bd. of Elections, 2025 Municipal Primary, Summary Results Report at 21, 174 (June 6, 2025)].[1]

As a result of the Defendant's actions, Pugh's rights to vote and to stand as a candidate for election were disenfranchised and, for himself and other electors enrolled in the Republican Party, deprived of the right to nominate any candidate for the office of Mayor of Lyons Borough. It is Pugh's contention that the application of Section 1405 of the Election Code (25 P.S. § 3155) to

---

[1] https://www.berkspa.gov/departments/election-services/election-results

2

the facts and circumstances is unconstitutional under the First and Fourteenth amendments of the U.S. Constitution.

Expedited relief is warranted here because the Pennsylvania Election Code has tasked the Defendant with the timely preparation of the official ballot for the forthcoming November 4, 2025 Municipal Election. Under the Uniform Overseas Absentee Voting Act (UOCAVA), official absentee ballots must be transmitted to voters in the uniformed services at least 45 days before an election. 52 U.S.C. § 20302(a)(8). Pennsylvania law incorporates by reference UOCAVA for the conduct of all general and municipal elections in the Commonwealth. 25 Pa.C.S. § 3508(a). Here, that creates a deadline of September 20, 2025 unless the Defendant were to obtain a waiver for undue hardship from the U.S. Under Secretary of Defense or other designee of the President of the United States. Id.: 52 U.S.C. § 20302(g); U.S. Under Secretary of Defense, Memorandum for Chief State Election Officials, DOD-UPR-0003 (Apr. 18, 2022).

Based on the foregoing grounds and as further set forth with the supporting authorities in the Argument Section, Pugh specifically requests in this Motion for a speedy hearing of a declaratory-judgment action, Fed. R. Civ. P. 57; for a preliminary injunction and that the Court "advance trial on the merits and consolidate it with the hearing" on a final injunction, Fed. R. Civ. P. 65(a)(2); that the Court order the Defendant to promptly file an Answer, but reserving all right to the Defendant to raise any grounds for dismissal by motion under Fed. R. Civ. P. 12(b) if also filed within the same amount of time; that the Court order the Defendant to produce at the scheduled hearing its most knowledgeable witness on the processes and timelines necessary to prepare an official ballot for a municipal election; and, as further described in the Argument Section, the Court provide for "targeted discovery" under Fed. R. Civ. P. 26(d)(1) before the hearing date set by the Court.

**CERTIFICATION OF SERVICE OF PROCESS MADE**

On Friday, June 27, 2025, undersigned counsel's staff provided a copy of the Complaint by e-mail to Cody Kauffman, Assistant County Solicitor for the Defendant and asked if Attorney Kauffman would accept service. Attorney Kauffman requested a Civil Rule 4 waiver of service of the Writ of Summons. Pugh cannot agree to that outcome because it will thwart his ability to be heard on the merits in a timely manner. Pugh therefore served the Complaint by a constable on the Defendant on June 30, 2025, namely, by hand-delivery to Ann Norton, Chief Clerk for the Defendant. [ECF No. 4].

On July 10, 2025, undersigned counsel caused a Joint Rule 26(f) Report to be served on counsel for the Defendant together with advanced notice of limited, written discovery that we intend to raise in the Rule 16 conference.

**ARGUMENT**

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016). The *Federal Rules of Civil Procedure* are specific applications of that authority, which the Court may dispense with "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As shown below, the instant case warrants the requested relief.

**I.      Holding an Expedited Hearing on the Merits.**

In the Complaint, Pugh seeks declaratory and injunctive relief. "The court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57. In an application for a preliminary inunction, "the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). There's no inconsistency between these remedies and both may be sought simultaneously: "[T]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. P. 57; Powell v.

4

McCormack, 395 U.S. 486, 517-18 (1969) ("[A] request for declaratory relief may be considered independently of whether other forms of relief are appropriate."); Chlystek v. Kane, 540 F.2d 171, 173 (3d Cir. 1976) ("[T]he Supreme Court has not regarded the availability of declaratory relief as an alternative and adequate remedy at law which would preclude a grant of equitable relief").

In an application under Civil Rule 57, courts have "broad discretion" whether to award such relief, County of Butler v. Wolf, 2020 U.S. Dist. LEXIS 93484, at *6 (W.D. Pa. May 28, 2020), and courts may consider non-exhaustive factors: (1) whether it "will streamline and narrow issues for discovery and trial, even if it will not entirely resolve the controversy," id. at *6-7 (quotation omitted), (2) whether "the determination is largely one of law, and factual issues (which expedited discovery is permitted and frequently granted) are not predominant, id. at *7; and (3) like requests for preliminary injunctions, whether "there are imminent or ongoing violations of important rights." Id. (citations omitted).

A significant distinction between applications under Civil Rules 57 and 65 is that "Plaintiffs need not establish immediate and irreparable injury to justify expedited review under Rule 57." Wolf, 2020 U.S. Dist. LEXIS 93484 at *14 n.3. However, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

Based on the foregoing, an expedited hearing on the merits is warranted here. Pugh seeks declaratory and injunctive relief, and it is well-settled that these remedies do not involve any right to jury trial. Curtis v. Loether, 415 U.S. 189, 193 (1974). Where the declaratory remedy tests the constitutionality of a statute, the Court "must make an independent constitutional judgment on the facts of the case," which is a question of law. Jacobellis v. Ohio, 378 U.S. 184, 190 (1964). This Court, therefore, will adjudge this case by finding the facts as well as the law. An expedited hearing

5

will clearly streamline and narrow issues, if not entirely resolving the controversy.

Secondly, the question of law predominates over any question of fact in this case. Most of the facts—the number of votes cast and voter registration and turnout in the May 20, 2025 Primary—are subject to judicial notice under Fed. R. Evid. 201. Meeting Minutes are publicly available from the Defendant's Special Meeting on June 6, 2025, where Defendant denied Pugh's petition to be certified as and declared the Republican nominee for Mayor of Lyons Borough but otherwise acknowledged that he received five write-in ballots. The "targeted discovery" discussed in Part III, infra, relates to any of the defenses that the Defendant may raise to injunctive relief, including whether the law imposes a deadline to have prepared the official ballot.

Finally, the Court is presented with imminent and ongoing violations of important, constitutional rights. A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of granting rather than refusing preliminary relief, and (4) an injunction is in the public interest. Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. at 24 (quotation omitted). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. (quotation omitted).

Pugh can satisfy all of the foregoing elements. However, while the moving party ordinarily has the burden to demonstrate a sufficient likelihood of success, there is a narrow exception in First Amendment cases. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3rd Cir. 2017). "In First Amendment [injunction] cases, the initial burden of proof is flipped." Schrader v. DA of York Cnty., 74 F.4th 120, 126 (3rd Cir. 2023). Since the government bears the burden of proof on the

ultimate question of a rule or statute's constitutionality, "plaintiffs must be deemed likely to prevail for the purpose of considering a preliminary injunction[.]" Reilly, 858 F.3d at 179 (quotations and modifications omitted).

Pugh has standing as both a candidate and an elector enrolled in the Republican Party who had cast a write-in ballot for himself. The Supreme Court agrees that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical correlative effect on voters." Bullock v. Carter, 405 U.S. 134, 143 (1972). That is because "the right to vote would be empty if the State could arbitrarily deny the right to stand for election." Lubin v. Panish, 415 U.S. 709, 721-22 (1974) (Douglas, *J.*, concurring). Thus, laws which impermissibly burden ballot access for a candidate works a deprivation against electors, themselves.

To present a ripe, as-applied constitutional challenge to Section 1405 of the Election Code, the U.S. Court of Appeals for the Third Circuit has specifically ruled that a litigant must "wait until the votes had allegedly not been counted or certified before seeking injunctive relief." Constitution Party of Pennsylvania v. Cortes, 433 F. App'x 89, 94 (3d Cir. 2011). Pugh has done so, and the Defendant has denied his petition to be certified as and declared the Republican nominee for the office of Mayor of Lyons Borough. A ripe controversy is before this Court, and the Defendant cannot contend that the matter is moot since the November 4, 2025 Municipal Election has not yet occurred and there is still some time to prepare the official ballot. "Plaintiffs can bring their claims in federal court even though they did not file an election contest in state court first." Acosta v. Democratic City Comm., 288 F. Supp. 3d 597, 624-25 (E.D. Pa. 2018).

Pugh has stated a cognizable First Amendment claim, shifting the burden onto the Defendant to show no likelihood of success on the merits. "[I]f the state restricts the ability of a

candidate or political party to be placed on state ballots, the First Amendment right to freedom of association and the Fourteenth Amendment right to equal protection under the law may be infringed." Chadda v. Bd. of Elections, 222 F. App'x 147, 149 (3d Cir. 2007) (citing Williams v. Rhodes, 393 U.S. 23, 30-31 (1968) and Bullock v. Carter, 405 U.S. 134, 149 (1972)). Primaries were originally privately conducted elections by political parties themselves. The first Primary in the United States was held in Pennsylvania by the Crawford County Republican Committee in 1868.[2] Since 1906,[3] Pennsylvania has administered primaries on behalf of political parties, inuring to their benefit for the purpose of policing against fraud or gross mismanagement. Supreme Court rulings on the Primary "do not stand for the proposition that party affairs are public affairs, free of First Amendment protections—and our later holdings make that entirely clear." California Democratic Party v. Jones, 530 U.S. 567, 573 (2000). "[O]ur cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences." Id. at 575 (quotation omitted). "The moment of choosing the party's nominee, we have said, is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to the political power in the community." Id. (quotation omitted).

"[F]reedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." Patriot Party v. Allegheny County Dep't of Elections, 95 F.3d 253, 259 (3d Cir. 1996). If interfering with "the right to choose its standard bearer, the Pennsylvania election laws burdened the Party's right of free association." Id. at 259.

Pugh has also stated a cognizable claim under the Due Process and Equal Protection clauses

---

[2] ERNST CHRISTOPHER MEYER, NOMINATING SYSTEMS: DIRECT PRIMARIES VERSUS CONVENTIONS IN THE UNITED STATES 147 (1902), *available at* Books.Google.com.
[3] Act of Feb. 17, 1906, No. 10, 1906 Pa. Laws Extra. Sess. 36.

of the Fourteenth Amendment, where the Pennsylvania Election Code imposes a mandatory minimum of 10 write-in ballots to win a Primary nomination but not any similar requirement for candidates who filed a nomination petition and had their names placed on the Primary ballot. "Undeniably," the Fourteenth Amendment of the U.S. Constitution "protects the right of all qualified citizens to vote, in state as well as in federal elections." Reynolds v. Sims, 377 U.S. 533, 554 (1964). In primaries, whether an elector "votes for a candidate with little chance of winning or for one with little chance of losing," every elector "has a right under the Constitution to have his vote fairly counted," Anderson v. United States, 417 U.S. 211, 227 (1974). Under the Equal Protection Clause, "[H]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." Bush v. Gore, 531 U.S. 93, 104-05 (2000). Additionally, the Due Process Clause protects rights that are "deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" Dobbs v. Jackson Women's Health Organization, 597 U.S. 215, 298 (2022) (quotation omitted).

Defendant cannot overcome a presumption of Pugh's likelihood of succeeding on the merits. In Berks County, the Defendant is the County Board of Elections and vested with discretion to conduct primaries and elections and to implement procedures intended to ensure honesty, efficiency, and uniformity. 25 P.S. §§ 2641(a), 2642(g); Donald J. Trump for President, Inc. v. Boockvar, 493 F. Supp. 3d 331, 351 (W.D. Pa. 2020) ("The Election Code vests county boards of elections with discretion to conduct elections and implement procedures intended to ensure the honesty, efficiency, and uniformity of Pennsylvania's elections.").

Under the Pennsylvania Election Code, the candidates who receive the highest "***plurality*** of votes of their party electors" within a Primary are ordinarily nominated by such political party for public office. 25 P.S. § 2882 (emphasis added). They are not subject to any minimum number

9

of ballots to be nominated. Id. This recognizes a deeply rooted concept of ordered liberty, derived from the State and federal constitutions and applicable to elections conducted by State actors and private associations, "that those who abstain from voting be considered as acquiescing in the result declared by a majority of those who exercise the suffrage." Munce v. O'Hara, 16 A.2d 532, 532-33 (Pa. 1940) (rejecting argument that ballot questions must receive an absolute majority of the electorate). "Apathy is not the equivalent of open opposition." Id. (quoting Cashman v. Entwistle, 100 N.E. 58 (Mass. 1912)). Boycotting an election is "an ineffectual kind of opposition," even within a private association, and for "elections under the laws of the states or the United States, this has never been doubted." Id. (quoting Schlichter v. Keiter, 27 A. 45, 58 (Pa. 1893)).

But Section 1405 (25 P.S. § 3155) requires write-in candidates in a Primary Election to receive a minimum of 10 write-in ballots ("irregular ballots") to be certified as and declared the nominee for a municipal office and placed on the official ballot for the Municipal Election:

> In the primary the county board shall not certify the votes cast on irregular ballots for any person for a justice of the peace, constable, National, State, county, city, borough, town, township, ward, school district, election or local party office unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office.

25 P.S. § 3155 (last sentence); see also, id. § 2872.1(36) (prescribing 10 signatures for nomination petitions for municipal office).

We contend that Section 1405 violates the First and Fourteenth Amendments of the U.S. Constitution as applied where, as here, (1) a Municipal Primary is conducted for a political party; (2) a write-in candidate, otherwise eligible to have his or her name placed on the official ballot, receives the highest plurality of votes cast for that same public office in the Municipal Primary but less than the threshold under Section 1405 of the Election Code (25 P.S. § 3155); (3) such candidate timely files with the county board of elections a petition to cumulate or identify write-

in votes and to be certified as and declared the nominee for that same public office; and (4) the statute affords political parties no other remedy for nominating candidates if no one was nominated by Primary for such public office.

Construing Section 1405 of the Election Code, the Supreme Court of Pennsylvania reasoned that it is necessary to prevent the official ballot "from being cluttered with the names of inactive or defunct political parties and their candidates." Shankey v. Staisey, 257 A.2d 897 (Pa. 1969). But evidence must, as a matter of strict scrutiny, show a "compelling state interest which justifies imposing such heavy burdens on the right to vote and to associate." Williams v. Rhodes, 393 U.S. 23, 31 (1968). The danger of ballot clogging cannot be "theoretically imaginable." Id. at 33. In Williams, an Ohio law which imposed a signature requirement of 15% of votes cast from the prior election, id. at 24-26, failed strict scrutiny.

This Court is not bound by Shankey, but it bears mention that the Supreme Court of Pennsylvania did not apply strict scrutiny in that case. Rather, drawing upon early 20th Century jurisprudence before the First Amendment was incorporated against the States,[4] the *Shankey* Court reasoned, "It is clear that the legislature may enact laws governing the conduct of general and primary elections." Shankey, 257 A.2d at 898 (citing Winston v. Moore, 91 A. 520, 244 Pa. 447, 455 (1914)). Shankey did not have the benefit of subsequent First Amendment jurisprudence by the U.S. Supreme Court regarding primaries, Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986) (parties may choose to have an Open Primary); California Democratic Party v. Jones, 530 U.S. 567, 573 (2000) (parties may choose to have a Closed Primary), and party conventions, Cousin v. Wigoda, 419 U.S. 477 (1975) (parties may disqualify delegates to the national convention chosen by Primary), Democratic Party of the United States v. Wisconsin ex

---

[4] Gitlow v. New York, 268 U.S. 652 (1925).

rel. La Follette, 450 U.S. 107 (1981) (same). In these instances, strict scrutiny is applied: The regulation must be "narrowly tailored to serve a compelling State interest." California Democratic Party, 530 U.S. at 582. "The power to regulate the time, place, and manner of elections," including primaries, "does not justify, without more, the abridgment of fundamental rights, such as the right to vote, or, as here, the freedom of political association." Tashjian, 479 U.S. at 217 (internal citation deleted). In the administration of primaries, "[A] State, or a court, may not constitutionally substitute its own judgment for that of the Party," id. at 224 (quoting Democratic Party of the United States, 45 U.S. at 123-24).

Neither did Shankey consider the problem of the empty ballot. That case involved a challenge by write-in candidates for the Constitutional Party, which for that year had qualified as a county political party. Shankey, 257 A.2d at 898 (citing 25 P.S. § 2831(b)). Where concerned about ballot clogging, the Supreme Court of Pennsylvania had third party candidates in mind. It had no occasion to consider the impact on electoral districts, like Lyons Borough, if the application of Section 1405 of the Election Code would result in no candidates on the official ballot at all, even among the two major political parties. Lyons Borough is a beautiful but very small place. It is roughly 0.4 square miles. In the 2020 U.S. Census, it had a population of 439. As of the May 20, 2025 Municipal Primary, it had 288 registered electors, including 118 enrolled in the Democratic Party and 122 enrolled in the Republican Party.

Here, from the May 20, 2025 Municipal Primary, Defendant certified no one as the nominee for the Republican or Democratic parties for the office of Mayor of Lyons Borough. But for any judicial relief, the official ballot will be empty for that office in the November 4, 2025 Municipal Election. While the need to prevent ballot clogging may be true as a general proposition, it cannot be applied in a manner where, as here, leaving a major political party with no nominee

12

whatsoever. This is especially acute in small or sparsely populated electoral districts like Lyons Borough, where 41 out of 122 enrolled Republican electors participated in the May 20, 2025 Primary. Pugh won five out of nine write-in ballots, constituting 56% of the popular vote. [Ex. B at 174; Ex. D, Berks County Bd. of Elections, 2025 Municipal Primary, Write-in Name Selection (Lyons Borough Republican Primary)]. That was still 12% of all 41 participating Republican electors in that Primary and this was the highest plurality of votes cast. Those Republican electors who did not cast any vote for Mayor are deemed to have acquiesced in the nomination of the candidate receiving the highest plurality of votes cast. On the other hand, the Election Code requires 10 qualified signatures from electors enrolled in the same political party to file a nomination petition to have one's name placed on the Primary ballot if seeking a municipal office or district election board. 25 P.S. § 2872.1(36). By incorporating that requirement, Section 1405 of the Election Code (25 P.S. § 3155) creates all sorts of resulting disparities which violate the Equal Protection Clause. Electors who sign a nomination petition are not obligated to vote for that candidate or, in fact, to vote in the Primary at all. Thus, if Pugh was running against another candidate who had his or her name placed on the Primary ballot, Pugh's five write-in ballots could include electors who had signed the rival candidate's nomination petition while the rest of those signers could have chosen not to vote in the Primary.

The application of Section 1405 of the Election Code to the facts and circumstances of the case cannot survive strict scrutiny here because it is not narrowly tailored to serve a compelling State interest. An outcome-determinative fact is that this Defendant was presented with a write-in candidate who timely and affirmatively petitioned to cumulate or identify the write-in votes and be certified as and declared the nominee notwithstanding Section 1405. The distinction is this: Section 1405 of the Election Code generally relieves county boards of elections of having to

investigate whether a write-in candidate for municipal office, or district election board, should be certified as the nominee if receiving less than 10 write-in ballots. We agree that county boards should not be burdened in that respect, particularly if write-in ballots are cast for persons who are not seeking to be nominated. But where, as here, the write-in candidate timely filed a petition with the county board, claiming the write-in ballots and accepting the nomination, then a county board of elections is not harmed. That is because reviewing those petitions go to "the very essence of its functions: the ascertainment of the winning candidates." In re McCracken Appeal, 88 A.2d 787, 789 (Pa. 1952). Construing the powers of the county board of elections under 25 P.S. §§ 2642 to 2644, the Supreme Court of Pennsylvania held that such include cumulating or identifying write-in ballots at the request of a candidate. McCracken, 88 A.2d at 788-89. "[N]othing can be more vital towards the accomplishment of an honest and just selection than the ascertainment of the intention of the voter." Id. at 789. "Canvassing and computing necessarily embrace acts of discretion," where county boards of elections may adopt regulations. Id. at 788. "It is because the Board is charged with discretional responsibilities that it has been armed with authority and power to issue subpoenas, summon witnesses and take testimony." Id. (discussing 25 P.S. § 2644).

There is no other adequate remedy here. The Pennsylvania Election Code does not provide for any process for political parties to fill vacancies on their ticket if no one was nominated by Primary for such public office. Rather, political parties may file a substitute nomination certificate if a candidate is nominated by Primary but afterwards should die or withdraw their candidacy. 25 P.S. § 2958. Political parties may file a nomination certificate in cases of special elections held without a Primary to fill a vacancy in public office. Id. § 2958. That's it. Thus, under the current Election Code and in the absence of judicial relief from this Court, the Chair of the Berks County Republican Committee cannot submit a nomination certificate to the Defendant on Pugh's behalf,

14

nominating him for Mayor of Lyons Borough.

Our research did not locate any other State with a similar statute to Section 1405. For those jurisdictions which limit write-in balloting, the law nevertheless preserves to political parties the power to fill vacancies on their ticket if no one was nominated by Primary. Alabama is illustrative of how the First Amendment violation Pugh complains of is properly avoided. Under the laws of that State, (1) write-in balloting is prohibited in municipal primaries, Ala. Code § 17-6-28(a); and (2) a Runoff Primary is held if primaries involve more than two candidates for the same office and none receive a majority of votes cast. Id. § 17-13-18(b). But Alabama law permits political parties to fill vacancies on their ticket, by nominations according to party rules, regardless of how the vacancy occurred—including the failure to nominate any candidate by Primary. Id. § 17-13-23.

In Pennsylvania, the State courts have construed this omission as a purposeful policy of the legislature to *deny* political parties such authority. In Essler v. Davis, 419 A.2d 217 (Pa. Commw. Ct. 1980), Republican electors in Philadelphia failed to nominate candidates for U.S. Representative and for State Representative in the 1980 primaries. Party officers nominated two candidates following the Primary, but the Pennsylvania Department of State rejected their nomination certificates. The Commonwealth Court denied their petitions for mandamus and reasoned at length that this process was not permitted by the Election Code because, once again relying on early 20th Century precedents, it "would open the door to a connivance between party leaders with a view to discouraging and omitting the making of nominations at the primaries, in order that they may be made by party committees in the old way." Id. at 220 (quoting Commonwealth ex rel. Meyers v. King, 6 Pa. D. & C. 155 (C.P. Dauphin 1924)).

The rationale articulated by the Commonwealth Court in Essler and in earlier judicial decisions cited in that case fails strict scrutiny under the First Amendment because presupposing

15

that the State *can* substitute its judgment for that of a party on how to nominate its candidates. Contra Tashjian, 479 U.S. at 217. Following the lead of Tashjian and California Democratic Party on the fundamental right of association under the First Amendment, U.S. courts of appeal have now recognized that the choice of political parties on the method of nominating their candidates — whether by way of primaries, privately conducted elections by the party (called the "Firehouse Primary" or "party canvass"), conventions, or mass meetings — cannot be taken "out of their hands" by statute or regulation. 6th Congressional Dist. Republican Comm. v. Alcorn, 913 F.3d 393, 403-04 (4th Cir. 2019). Accordingly, for Defendant to completely deny write-in candidates, like Pugh, the nomination even though having the highest plurality of votes cast within the Primary or otherwise nominated according to party rules in the event of a failure of a Primary nomination, violates the First Amendment and judicial relief is warranted.

Pugh will suffer irreparable harm if relief is not granted. As mentioned, the Uniform Overseas Absentee Voting Act (UOCAVA) requires official ballots to be sent to service members at least 45 days prior to an election. 52 U.S.C. § 20302(a)(8); 25 Pa.C.S. § 3508(a). That creates a deadline of September 20, 2025 for the Defendant to create the official ballot, unless there are no service members in Lyons Borough who are registered to vote and have requested an absentee ballot or if the Defendant would request and obtain a waiver for undue hardship from a designee of the President of the United States. But for timely equitable and declaratory relief, Pugh's name will not appear on the official ballot for the November 4, 2025 Municipal Election.

The balance of equities tips in favor of Pugh, and the public interest is furthered by the grant of an injunction, vindicating the rights of Pugh and the four other Republican electors in Lyons Borough who nominated him for the office of Mayor.

Based on the foregoing, the Court should grant this Motion and schedule an expedited

hearing on the merits of declaratory and injunctive relief under Fed. R. Civ. P. 57 and 65(a)(2), and, after affording an opportunity to be heard, to grant the same. The Court should declare 25 P.S. § 3155 unconstitutional as applied to the facts and circumstances and preliminarily and permanently enjoin the Defendant by compelling the inclusion of Brandon Pugh on the official ballot as the Republican nominee for the office of Mayor of Lyons Borough in the forthcoming November 4, 2025 Municipal Election, and compel Defendant to file an amended or corrected certification of the official results of the May 20, 2025 Primary, so as to include Brandon Pugh as the official nominee as aforesaid, and to submit an amended or corrected certification to the Pennsylvania Secretary of State.

**II.    Expediting Limited Discovery.**

We request that the Court order the parties to promptly submit a Civil Rule 26(f) report and proceed to an immediate Civil Rule 16 conference and, in accordance with Fed. R. Civ. P. 26(d)(1), enter an order directing for expedited, limited discovery. "A district court has wide latitude in structuring discovery and its rulings will not be overturned absent a showing of a clear abuse of discretion." Westchester Fire Ins. v. Household Int'l, Inc., 167 F. App'x 895, 899 n.2 (3d Cir. 2006) (citing McMullen v. Bay Ship Mgmt., 335 F.3d 215, 217 (3d Cir. 2003)). "The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." Ardrey v. United Parcel Servs., 798 F.2d 679, 682 (4th Cir. 1986) (citations omitted). District courts have "typically required the party seeking discovery to show good caused for its motion, such that the request is reasonable in light of the circumstances." Smauel, Son & Co. v. Beach, 2013 U.S. Dist. LEXIS 129486, at *7 (W.D. Pa. Sept. 11, 2013) (citing Kone v. ThyssenKrupp USA, Inc., 2011 U.S. Dist. LEXIS 109518, at *10 (D. Del. Sept. 26, 2011)).

## CONCLUSION

**WHEREFORE**, based on the foregoing, Plaintiff respectfully requests that the Honorable

Court grant this Motion and schedule an expedited hearing on the merits of declaratory and injunctive relief, to direct the Defendant to immediately file an Answer to the Complaint together with any Civil Rule 12 motions, to direct the parties to immediately submit a Civil Rule 26(f) report and to participate in an initial Civil Rule 16 conference. After affording the parties an opportunity to be heard at the expedited hearing, the Plaintiff requests that the Court render judgment in his favor and against Defendant, and to grant the following relief:

(A) Declare Section 1405 of the Pennsylvania Election Code (25 P.S. § 3155) unconstitutional as applied to the facts and circumstances of the where, as here, (1) a Municipal Primary is conducted for a political party; (2) a write-in candidate, otherwise eligible to have his or her name placed on the official ballot, receives the highest plurality of votes cast for that same public office in the Municipal Primary but less than the threshold under Section 1405 of the Election Code (25 P.S. § 3155); (3) such candidate timely files with the county board of elections a petition to cumulate or identify write-in votes and to be certified as and declared the nominee for that same public office; and (4) the statute law affords political parties no other remedy for nominating candidates if no one was nominated by Primary for such public office.

(B) Enjoin the Defendant from applying 25 P.S. § 3155 to the Plaintiff as to the May 20, 2025 Republican Municipal Primary for the office of Mayor of the Borough of Lyons and to certify, or to amend or correct the certification of, the results of the May 20, 2025 Municipal Primary so as to declare Plaintiff the nominee of the Republican Party for the office of Mayor of the Borough of Lyons, and to submit an amended or corrected certification to the Pennsylvania Secretary of State, and enjoin Defendant to print Plaintiff's name upon the official ballot at the succeeding Municipal Election for November 4, 2025 as the nominee of the Republican Party for the office of Mayor of the Borough of Lyons.

    (C)    Entertain and, after affording the parties an opportunity to be heard, grant a request for ancillary relief under 42 U.S.C. § 1988.

    (D)    Such other relief the Court deems necessary, just, or appropriate.

Respectfully submitted

**CORNERSTONE LAW FIRM, LLC**

Dated: July 10, 2025    By:    /s/ Joel A. Ready
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
joel@cornerstonelaw.us