**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON PUGH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 5:25-cv-03267 |
| | : | |
| BERKS COUNTY BOARD OF ELECTIONS, | : | |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P 12(b)(6)**

1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ............................................................................................................1 | |
| II. | FACTUAL AND PROCEDURAL HISTORY ................................................................2 | |
| | A. Factual History.....................................................................................................2 | |
| | B. Procedural History ..............................................................................................6 | |
| III. | QUESTION PRESENTED ...............................................................................................7 | |
| IV. | ARGUMENT....................................................................................................................7 | |
| | A. The Court's standard of review for a motion to dismiss under Rule 12(b)(6).........7 | |
| | B. Plaintiff asserts an "as applied" constitutional challenge to Section 1405 .............8 | |
| | C. The Anderson-Burdick balancing test—and not strict scrutiny—is the appropriate standard of review for Plaintiff's ballot access claims ............................................9 | |
| | D. Appling the *Anderson-Burdick* framework, Section 4105's minimum write-in vote requirement to Plaintiff in the May 2025 primary election does not violate the First or Fourteenth Amendments or the Equal Protection Clause ........................11 | |
| V. | CONCLUSION ...............................................................................................................15 | |

**I.   INTRODUCTION**

Plaintiff Brandon Pugh ("Plaintiff") filed a Complaint asserting a claim under 42 U.S.C. § 1983 challenging the constitutionality, as applied to Plaintiff by defendant Berks County Board of Elections ("Berks County") in the May 20, 2025 municipal primary election, a provision of the Pennsylvania Election Code, Act of Jun. 3, 1937, P.L. 1333, No. 320 ("Election Code"), as amended.  The challenged provision prohibits a county board of elections from certifying votes cast on irregular ballots (i.e., write-in votes) for any person for certain municipal and party offices in primary elections unless the person receives at least the number of write-in votes required on a nomination petition for the office.  *See* Complaint (ECF No. 1) ¶ 34; Section 1405 of the Election Code, 25 P.S. § 3155.

In response to Plaintiff's Complaint, Berks County, which the Election Code charges with conducting and administering primary and general elections within the county's borders, has filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

For the reasons set forth below, Plaintiff's constitutional challenge to Section 1405 of the Pennsylvania Election Code fails as a matter of law, and Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.  Factual History.[1]

Plaintiff is an adult individual who resides in the Borough of Lyons, Berks County, Pennsylvania.  Complaint (ECF No. 1) ¶ 1.  The Borough of Lyons ("Lyons Borough") is a municipality within Berks County, Pennsylvania, which spans roughly 0.4 square miles and, based on 2020 U.S. Census data, has a population of 439 individuals.  Complaint (ECF No. 1) ¶ 12.  Based on Berks County's most recent certification under Section 302(m) of the Election

---

[1]  Because Berks County has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the factual history set forth herein accepts as true all well-pleaded facts set forth in Plaintiff's Complaint, and Berks County expressly reserves its right to contest some or all of those allegations, if appropriate, if the Court denies Berks County's motion to dismiss.  There is no dispute about the relevant material facts regarding the number of Plaintiff's write-in votes, the minimum number of votes required by Section 1405 of the Election Code, and Berks County's reliance on Election Code Section 1405 in denying Plaintiff's Petition to certify Plaintiff as the Republican Party nominee for the office of Lyons Borough Mayor.  Therefore, this case is ready for the Court's disposition on Berks County's motion to dismiss.

Nevertheless, on July 10, 2025, Plaintiff served written discovery requests on Berks County.  Because Plaintiff's discovery requests were served before the parties had an opportunity to conduct their Rule 26(f) conference, they are premature under Fed. R. Civ. P. 26(d)(1).  In any event, based on the Court's Order granting Plaintiff's request for a speedy determination of Plaintiff's claims for declaratory and injunctive relief (ECF No. 8), Berks County respectfully requests the Court to stay the parties' obligation to meet and confer pursuant to Rule 26(f) and stay discovery during the pendency of Berks County's motion to dismiss.

Berks County denies Plaintiff's allegation in Paragraph 31 of the Complaint that Berks County uses computer software to automatically cumulate write-in votes.  To the contrary, Berks County manually reviews and tallies all write-in votes.  Many of Plaintiff's discovery requests seek information or documents relating to any computer software Berks County uses to identify, cumulate, and tabulate write-in ballots cast within primaries and elections, manufacturer's bulletins and instructions for such software, and Berks County agents familiar with the capability and use of such software.  As stated above, Berks County does not use computer software to cumulate write-in votes.  Because there is no dispute regarding the relevant facts surrounding Plaintiff's constitutional claims—which do not involve the use of computer software—Plaintiff's requests are unduly burdensome and otherwise beyond the scope of discovery.

2

Code, 25 P.S. § 2642(m), Lyons Borough has a total of 288 registered electors, including 118 enrolled in the Democratic Party and 122 enrolled in the Republican Party. Complaint (ECF No. 1) ¶ 13. Plaintiff is and was a registered elector of Lyons Borough and enrolled in the Republican Party. Complaint (ECF No. 1) ¶ 14. Plaintiff presently serves as a Member of the Borough Council of Lyons Borough. Complaint (ECF No. 1) ¶ 14.

On May 20, 2025, Berks County conducted a municipal primary election (the "Municipal Primary"), and the Official Republican Municipal Primary Ballot included public offices in Lyons Borough for Mayor, Member of Council, and Tax Collector. Complaint (ECF No. 1) ¶ 15. No candidate had filed a nomination petition with Berks County for the office of Mayor in Lyons Borough to be placed on the Official Republican Municipal Primary Ballot for the Municipal Primary. Complaint (ECF No. 1) ¶ 16. Where no candidate files a nomination petition to be placed on an official primary ballot for a public office, that is colloquially known as an "Empty Primary." Complaint (ECF No. 1) ¶ 17.

On May 20, 2025, Plaintiff conducted a write-in campaign for the office of Mayor of Lyons Borough in the Republican Party Primary and received a total of five write-in votes from Republican electors, one of which was cast by Plaintiff himself. Complaint (ECF No. 1) ¶ 18. Plaintiff received the highest plurality of votes cast for the Republican Party nomination for Lyons Borough Mayor. Complaint (ECF No. 1) ¶ 18. The Election Code refers to "irregular ballots," which are colloquially known as "write-in ballots," where an elector may write-in the name of any person of the elector's choosing. *See* 25 P.S. § 3155. Complaint (ECF No. 1) ¶ 19.

3

Section 1405 of the Election Code, 25 P.S. § 3155, as amended, says in relevant part:

> The county board, in computing the votes cast at any primary or election, shall compute and certify votes cast on irregular ballots exactly as such names were written, stamped or deposited in or on receptacles for that purpose, and as they have been so returned by the election officers. . . . In the primary the county board shall not certify the votes cast on irregular ballots for any person for a . . . borough . . . office **unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office**.

25 P.S. § 3155 (Manner of computing irregular ballots) (amended Oct. 31, 2019, P.L. 552, No. 77 (emphasis added); *see* Complaint (ECF No. 1) ¶ 20. Under the Election Code, a nomination petition for the office of Mayor of Lyons Borough requires a minimum of ten (10) signatures of registered electors who are enrolled members of a political party. 25 P.S. § 2872.1(36); *see* Complaint (ECF No. 1) ¶ 21. Accordingly, Section 1405 of the Election Code requires a person to receive a minimum of ten (10) write-in votes as a party nominee for the office of Lyons Borough Mayor before Berks County can certify those write-in votes and declare that person the winner and party nominee for the office of Lyons Borough Mayor.

In Berks County's Official Results of the May 20, 2025 Municipal Primary, Lyons Borough had approximately 32.29% voter turnout, consisting of 33.61% Republican turnout (41 ballots cast out of 122 registered Republican Party electors) and 39.83% Democrat turnout (47 ballots cast out of 118 registered Democrat Party electors). Complaint (ECF No. 1) ¶ 30.

In the May 2025 Republican Primary, nine write-in ballots were cast for the office of Lyons Borough Mayor, as follows: Brandon Pugh (Plaintiff) – 5 votes; Pugh – 1 vote; Meggin Reed – 1 vote; Alex Darlington – 1 vote; Leonard J. Haring – 1 vote. Complaint (ECF No. 1) ¶ 22. Based on these results, Plaintiff did not receive a minimum of ten (10) write-in votes for the Republican Party nomination for the office of Lyons Borough Mayor as required by Section 1405 of the Election Code. 25 P.S. § 3155; *see* Complaint (ECF No. 1) ¶ 23.

4

On May 30, 2025, Plaintiff timely filed with Berks County a Petition to Cumulate or Identify Write-In Votes and to be Certified as and Declared the Republican Nominee ("Petition").  Complaint (ECF No. 1) ¶ 24.  Plaintiff's Petition requested Berks County to cumulate his five write-in votes as the Republican Party nominee for the office of Lyons Borough Mayor and certify and declare Plaintiff as the Republican Party nominee for that office notwithstanding the 10-vote minimum requirement in Section 1405 of the Election Code.  Complaint (ECF No. 1) ¶ 24.  Plaintiff's Petition cited legal authorities and contended that enforcement of Section 1405, as applied to the facts and circumstances of Plaintiff's write-in votes in the May 2025 Municipal Primary as the Republican Party nominee for Mayor of Lyons Borough, violated the First and Fourteenth amendments of the U.S. Constitution.  Complaint (ECF No. 1) ¶¶ 25 & 26.

On June 6, 2025, Berks County held a Special Meeting at which Berks County granted in part and denied in part Plaintiff's Petition.  Complaint (ECF No. 1) ¶ 27.  Berks County granted the portion of Plaintiff's Petition requesting Berks County to cumulate Plaintiff's five write-in voted, thereby formally acknowledging that Plaintiff received five votes in the Republican Primary for the office of Lyons Borough Mayor.  Complaint (ECF No. 1) ¶ 27.  Relying on Section 1405 of the Election Code, 25 P.S. § 3155, however, Berks County denied the portion of Plaintiff's Petition requesting Berks County to certify and declare Plaintiff the Republican Party nominee for the office of Lyons Borough Mayor for the November 2025 general election.  Complaint (ECF No. 1) ¶ 27.

During the same June 6, 2025 Special Meeting, Berks County also certified the results of the Primary Election, which reflected that no one was certified as the Republican Party nominee for the office of Lyons Borough Mayor for the November 2025 general election.  Complaint

(ECF No. 1) ¶ 27.  Berks County regularly complies with Section 1405 of the Election Code, 25 P.S. § 3155, as well as all other provisions of the Election Code, when conducting primary and general elections.  Complaint (ECF No. 1) ¶ 28.

On June 12, 2025, Berks County publicly announced on its website that write-in candidates who were certified as the nominees of their political party in the May 2025 Municipal Primary, intending to accept their nominations, must submit an acceptance packet to Berks County on or before July 7, 2025.  Complaint (ECF No. 1) ¶ 32.  Were it not for Berks County's enforcement of the 10-vote minimum requirement in Section 1405 of the Election Code, Plaintiff would have been certified as the Republican Party nominee for the office of Lyons Borough Mayor, which would have entitled Plaintiff to have his name placed on the official ballot as the Republican Party nominee for the office of Lyons Borough Mayor in the November 4, 2025 general election.  Complaint (ECF No. 1) ¶ 33.

### B. Procedural History.

Plaintiff commenced this action by filing a Complaint (ECF No. 1) against Berks County, which is responsible for conducting and administering all primary and general elections within the county's borders, including computing and canvassing all votes cast and publicly declaring and certifying election results.  25 P.S. §§ 2881, 3154.  Plaintiff served his Complaint on Berks County on June 30, 2025.  *See* Return of Service (ECF No. 4).

On July 10, 2025, Plaintiff filed a Motion for Speedy Declaratory Judgment Hearing, for a Preliminary Injunction, and Other Relief.  Motion (ECF No. 7).  On July 11, 2025, the Court entered an Order granting in part Plaintiff's motion to expedite the proceedings and ordered Berks County to answer, move, or otherwise respond to Plaintiff's Complaint by July 18, 2025.

On July 18, 2025, Berks County filed its motion to dismiss Plaintiff's Complaint (ECF No. 11) and this accompanying brief in support of Berks County's Motion.

For the reasons set forth below, Section 1405 of the Election Code does not impermissibly burden Plaintiff's constitutional rights under the First and Fourteenth Amendment of the U.S. Constitution. Therefore, Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed.

### III. QUESTION PRESENTED

> Should the Court grant Berks County's Rule 12(b)(6) motion to dismiss Plaintiff's Complaint because the minimum-vote requirement in Section 1405 of the Election Code, 21 P.S. § 3155, as applied to Plaintiff in the May 2025 Municipal Primary, does not violate the First or Fourteenth Amendments the United States Constitution?

**Suggested answer:**  Yes.

### IV. ARGUMENT

#### A. The Court's standard of review for a motion to dismiss under Rule 12(b)(6).

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 264 (3d Cir. 2013). Although the Court must, in considering a 12(b)(6) motion to dismiss, accept as true all factual allegations in a complaint, it is not required to accept legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1949-1950, 173 L. Ed. 2d 868 (2009).[2]

---

[2]  The Court "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners,*

*(footnote continued on next page . . .)*

To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556, 127 S. Ct. at 1955.  The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557, 127 S. Ct. at 1955 (brackets omitted); *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.  When a complaint's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Plaintiff asserts an "as applied" constitutional challenge to Section 1405.

There are two types of constitutional challenges to a statute.  A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case.  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a

---

*LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994)).

constitutional right. *Id.* (citing *Wisconsin Right to Life, Inc. v. FEC*, 546 U.S. 410, 411-412, 126 S. Ct. 1016, 1018, 163 L.Ed.2d 990 (2006) (per curiam)).

Here, Plaintiff asserts a challenge to Section 1405 of the Election Code "as applied to the facts and circumstances of [his] write-in candidacy for Mayor of Lyons Borough, as violating the First and Fourteenth amendments of the U.S. Constitution" as applied to the following alleged facts and circumstances:

(1) a Municipal Primary is conducted for a political party;

(2) a write-in candidate, otherwise eligible to have his name placed on the official ballot, receives the highest plurality of votes cast for that same public office in the Municipal Primary but less than the threshold under Section 1405 of the Election Code (25 P.S. § 3155);

(3) such candidate timely files with the county board of elections a petition to cumulate or identify write-in votes and to be certified as and declared the nominee for that same public office; and

(4) the statute law affords parties no other remedy for nominating candidates if no one was nominated within a Primary Election for such public office.

Complaint (ECF No. 1) ¶ 34; Motion for Speedy Decl. Jmt. Hearing (ECF No. 7) at 10-11. Accordingly, the Court must train its sights on the question whether the application of Section 1405 was constitutional in this particular case. *Marcavage*, 609 F.3d at 274.

### C. The *Anderson-Burdick* balancing test—and not strict scrutiny—is the appropriate standard of review for Plaintiff's ballot access claims.

Election laws inevitably affect constitutional rights to some degree, but the mere existence of barriers to ballot access does not automatically trigger strict scrutiny. States retain the authority to regulate elections to ensure fairness, order, and integrity in the democratic process. For example, the Supreme Court has upheld laws requiring candidates to demonstrate substantial support to qualify for the ballot, as such requirements prevent voter confusion and ensure the reliability of the electoral process. *Green Party of Georgia v. Kemp*, 171 F. Supp.3d

9

1340 (2016). The correct standard for this Court to apply to Plaintiff's constitutional challenge of Section 1405 is the *Anderson-Burdick* balancing test. *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564, 75 L.Ed.2d 547 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 112 S. Ct. 2059, 119 L.Ed.2d 245 (1992)); *Mazo v. New Jersey Secretary of State*, 54 F.4th 124, 140-141 & nn. 14-36 (3d. Cir. 2022) (*Anderson-Burdick* instead of traditional strict scrutiny applies to laws that primarily regulate the mechanics of the electoral process instead of aiming at regulating political speech).[3] Section 1405 is not aimed at regulating political speech but instead regulates the mechanics of the election process. Where, as here, the challenged statute—Section 1405 of the Election Code—imposes only "reasonable, nondiscriminatory restrictions," *Mazo*, 54 F.4th at 137 (quoting *Anderson*, 460 U.S. at 788, 103 S. Ct. 1564), courts should use the *Anderson-Burdick* sliding scale approach under which a State need only show that its "legitimate interests . . . are sufficient to outweigh the limited burden," *id.* (quoting *Burdick*, 504 U.S. at 440, 112 S. Ct. 2059. Accordingly, under *Rogers* and *Mazo*, this Court must apply the *Anderson-Burdick* balancing test.

---

[3] Ignoring clear Third Circuit precedent in *Rogers* and *Mazo*, *supra*, Plaintiff incorrectly contends that the Court is required to apply strict scrutiny to the application of Section 1405 to the facts and circumstances alleged. Motion for Speedy Decl. Jmt. Hearing (ECF No. 7) at 11. Plaintiff relies heavily on *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S. Ct. 5, 21 L.Ed.2d 24 (1968). *Id.* In *Shankey v. Staisey*, 436 Pa. 65, 75, 257 A.2d 897, 902 (Pa. 1969), the Pennsylvania Supreme Court upheld the validity of the then new minimum write-in vote requirement in Section 1405 of the Election Code in the face of challenges under both the Pennsylvania and United States Constitutions. In doing so, the *Shankey* Court easily distinguished *Williams v. Rhodes*, which involved a challenge to the "maze of Ohio statutes which operated to keep new parties off the ballot" for U.S. President, which included requiring compiling signatures of qualified voters who total at least 15% of those voting in the last gubernatorial election, compared to Pennsylvania's much less onerous signature requirements, including the reasonable requirements of Section 1405. Id. at 73-74, 257 A.2d at 901. Additionally, the Ohio election laws at issue in *Rhodes* did not permit write-in voting at all. *See Rhodes*, 393 U.S. at 35-36, 89 S. Ct. at 13 (Douglas, J., concurring).

Under the *Anderson-Burdick* framework, the Court must consider what burden is placed on the rights Plaintiff seeks to assert, and then balance that burden against the precise interests identified by the state and the extent to which these interests require that Plaintiff's rights be burdened. *Rogers*, 468 F.3d at 194. Only after weighing these factors can the Court decide whether the challenged statute is unconstitutional. *Id.* (citing *Anderson*, 460 U.S. at 789, 103 S. Ct. 1564); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-91 (2008) (Opinion of Stevens, J.) (*Anderson-Burdick* requires courts to weigh the character and magnitude of the burden, if any, imposed by the law on protected rights against the state's interests in and justifications for the law). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest," while those imposing "[l]esser burdens … trigger less exacting review, and [the] State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cty. Area New Party*, 520 U.S. 351, 358-59 (1997).

      **D.**      **Applying the *Anderson-Burdick* framework, Section 1405's minimum write-in vote requirement to Plaintiff in the May 2025 primary election does not violate the First or Fourteenth Amendments or the Equal Protection Clause.**

In this case, the Court must look at the nature of the rights asserted by Plaintiff, and the burdens, if any, imposed by Section 1405 of the Election Code on Plaintiff as a person who received irregular votes (i.e., write-in votes) in a primary election in support of his nomination as the Republican Party nominee for the office of Lyons Borough Mayor to determine if the burden is justified. *Rogers*, 468 F.3d at 194. Plaintiff asserts his rights as an elector to vote for the candidate of his choice and his right as a candidate to have his name appear on the ballot.

By providing for write-in votes, the Election Code gives every elector the right to vote for whomever he chooses. Therefore, Plaintiff's right to cast a write-in vote for any person,

11

including himself, as a candidate was not burdened at all.

The right of a candidate to have his name on the ballot is not such an absolute one, because there are competing interests at stake, including the avoidance of an unduly complicated or cluttered ballot that may confuse voters and make use of voting machines difficult. *See Shankey*, 436 Pa. at 70. The General Assembly took that interest into account by creating a two-tier system a candidate must satisfy before his name may appear on the ballot: First, the party must become a legal state or county party under the requirements of the Section 801, 25 P.S. § 2831. *Id.* at 71, 257 A.2d at 899. Second, an individual must show a minimum of public support either through a nomination petition (Section 912, 25 P.S. § 2872.1, in the present case Section 912(36), 25 P.S. § 2872.1(36)), or through the votes received at the primary (Section 1405, 25 P.S. § 3155). The General Assembly reasonably determined that candidates should have to show at least this much public support before they deserved a spot on the ballot. *Id.*

Plaintiff also challenges Berks County's application of Section 1405 to him on Equal Protection grounds. Plaintiff asserts that a candidate who fills out a nominating petition does not have the 10-vote minimum that a person receiving write-in votes does, and attempts to conjure up scenarios to demonstrate allegedly disparate treatment, such as signers of nomination petitions to place a candidate on the ballot not being required to vote for that candidate on election day. Motion for Speedy Decl. Jmt. (ECF No. 7) at 13. These are non sequiturs.

The Pennsylvania Supreme long ago concluded Section 1405 does not violate the Equal Protection Clause. *Shankey*, 436 Pa. at 71, 257 A.2d at 900. Although *Shankey* is not binding on this Court on issues of interpreting federal law or the U.S. Constitution, there is no reason for this Court to reach a different conclusion.

The key is that a candidate who appears on the primary ballot has already demonstrated a minimum level of support for their candidacy by filling out the nominating petition. *Shankey*, 436 Pa. at 69-71, 257 A.2d at 899. More fundamentally, Section 1405 promotes equal elections by requiring every person who desires to appear on the general electoral ballot to have satisfied the same condition—the show of support by a set number of people. *Id.* at 69, 257 A.2d at 899. This can be done by petition or by primary election victory, and what is important is not that ballots and petitions are equated but that the number of people behind each are equated. *Id.* Any other system would create unequal elections by giving minority party candidates and their supporters the advantage of not having to secure the same showing of public support before being put on the ballot as required by a majority party candidate. *Id.* at 69-70; 257 A.2d at 899.

In *Burdick* itself, the Supreme Court held that Hawaii's outright prohibition on write-in voting did not violate the First or Fourteenth Amendments because the state provided alternative means of ballot access that were reasonable and nondiscriminatory. *Burdick v. Takushi*, 504 U.S. at, 437, 112 S. Ct. at 2065. The Court concluded that any burden imposed by Hawaii's write-in vote prohibition is a very limited one. *Id.* To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot. *Id.* (internal quotations, citations omitted).

Similarly, in *Blair v. Hebl*, a Wisconsin statute requiring write-in candidates to receive a minimum percentage of votes in the primary election to qualify for the general election ballot was found not to violate a candidate's First and Fourteenth Amendment rights or the Equal Protection Clause when there was available an alternative means of gaining access to the ballot through filing nominating papers. *Blair v. Hebl*, 498 F. Supp. 756, 761 (W.D. Wis. 1980), *aff'd*

13

*sub nom. Philip J. Blair v. Francis J. Hebl,* 639 F.2d 786 (7th Cir. 1980).

These decisions emphasize that states may impose conditions on write-in voting to ensure the integrity and efficiency of elections, provided the restrictions are reasonable and nondiscriminatory as they are with Section 1405 of the Election Code. The requirement for a minimum number of votes on irregular ballots in a primary election aligns with a state's interest in ensuring that candidates demonstrate sufficient support before advancing to the general election. These provisions are generally upheld unless they impose severe burdens or discriminate against specific groups of voters or candidates.

The minimum-vote requirement in Section 4105 also supports the State's and the public's interest in having serious candidates attain public office, rather than opportunistic persons seeking office on a whim when they realize there is a vacant ballot. Enforcing Section 1405's minimum-vote requirement to preclude Berks County from declaring Plaintiff the Republican Party nominee based on his receipt of a mere five write-in votes furthers these State and public interests.

In this instance, there is little or no burden on a person seeking to become the nominee of a major party for Lyons Borough Mayor. Further, Plaintiff articulates no such burden within his Complaint. Plaintiff concedes that a candidate can be placed on the ballot for the Republican Party nominee for Lyons Borough Mayor (and other municipal and party offices) by obtaining ten signatures of qualified electors of the Republican Party on a nominating petition. Section 1405 simply matches that requirement for individuals who choose not to go through the nomination petition process. This minimal burden is justified by the State's interests.

Although Plaintiff's Complaint purports to promote the major party's rights, thus far there is no indication that any political party shares his belief that the party's interest is best

14

served by waiving enforcement of Section 1405's minimum-vote requirement to Plaintiff under the circumstances alleged.

## V. CONCLUSION

For all the reasons above, the Court should grant Berks County's motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. Under the facts pleaded, there is no plausible constitutional violation by the neutral and nondiscriminatory enforcement of the minimum-vote requirement in Section 1405 of the Election Code.

                                                Respectfully submitted,

Dated: July 18, 2025                          **SMITH BUKOWSKI, LLC**

                                        By: /s/ Jeffrey D. Bukowski
                                                Jeffrey D. Bukowski, Esquire
                                                Attorney I.D. No. 76102
                                                JBukowski@SmithBukowski.com
                                                1050 Spring Street, Suite 1
                                                Wyomissing, PA 19610
                                                (610) 685-1600

                                                *Counsel for Defendant,*
                                                *Berks County Board of Elections*