**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDON PUGH,<br><br>                  Plaintiff,<br><br>    v.<br><br>BERKS COUNTY BOARD OF ELECTIONS,<br><br>                  Defendant. | Civil No. 5:25-cv-03267-JMG |

**BRIEF OF SECRETARY AL SCHMIDT &
PENNSYLVANIA DEPARTMENT OF STATE AS AMICI CURIAE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTEREST OF AMICI CURIAE ............................................................................................ 1

ARGUMENT ............................................................................................................................ 2

I.      The Pennsylvania Election Code requires all political party nominees to meet a basic threshold indication of public support. ............................................. 2

II.     Other states also require write-in candidates to meet certain requirements prior to certification. .................................................................................................. 3

III.    It is constitutional to require Mr. Pugh to get the same number of write-in votes at the primary election as signatures required for a nomination petition. .................................................................................................................... 6

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .................................................................. 8

*Appeal of McCracken*, 88 A.2d 787 (Pa. 1952) ................................................................ 3

*Burdick v. Takushi*, 776 P.2d 824 (Haw. 1989) ................................................................ 6

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ........................................... 9

*Dayhoff v. Weaver*, 808 A.2d 1002 (Pa. Cmwlth. Ct. 2002) ............................................ 7

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ......................................... 6, 7, 9

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) ................................................. 8

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ............................................................ 6, 7

*Shankey v. Staisey*, 257 A.2d 897 (Pa. 1969) .................................................................. 8

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986) ............................... 9

**Statutes**

10 Ill. Comp. Stat. 17-16.1 ................................................................................................. 5

10 Ill. Comp. Stat. 5/7-59 ................................................................................................... 3

17 R.I. Gen. Laws § 17-19-31 ............................................................................................ 6

25 P.S. § 2621 .................................................................................................................... 1

25 P.S. § 2812 .................................................................................................................... 8

25 P.S. § 2831 .................................................................................................................... 2

25 P.S. § 2862 .................................................................................................................... 2

25 P.S. § 2867 ................................................................................................................. 2, 8

25 P.S. § 2868 .................................................................................................................... 2

25 P.S. § 2869 .................................................................................................................... 2

25 P.S. § 2870 ............................................................................................................................. 2

25 P.S. § 2872.1 ................................................................................................................. 2, 3, 8

25 P.S. § 2872.2 ............................................................................................................................. 2

25 P.S. § 2882 ............................................................................................................................ 3, 9

25 P.S. § 3155 ......................................................................................................................... 1, 3, 9

25 P.S. § 3159 ............................................................................................................................. 1

25 P.S. § 3167 ............................................................................................................................. 7

25 P.S. §§ 2861-2883 ................................................................................................................. 2

71 P.S. § 273 ................................................................................................................................ 1

Ala. Code § 17-6-28 .................................................................................................................. 6

Ariz. Rev. Stat. § 16-312 ........................................................................................................... 5

Ariz. Rev. Stat. § 16-645 ........................................................................................................... 3

Ark. Code § 7-5-205 .................................................................................................................. 6

Cal. Elec. Code § 8600 .............................................................................................................. 5

Cal. Elec. Code § 8601 .............................................................................................................. 5

Colo. Rev. Stat. § 1-4-1102 ....................................................................................................... 5

Colo. Rev. Stat. § 1-7-201 ......................................................................................................... 3

Conn. Gen. Stat. § 9-373 ........................................................................................................... 5

Conn. Gen. Stat. § 9-377 ........................................................................................................... 6

Del. Code tit. 15, § 3402 ............................................................................................................ 5

Fla. Stat. § 99.061 ....................................................................................................................... 5

Ga. Code § 21-2-133 ............................................................................................................... 5, 6

Idaho Code § 34-702 .................................................................................................................. 3

Idaho Code § 34-702A ................................................................................................... 5

Ind. Code § 3-8-2.5-4 ..................................................................................................... 5

Ind. Code § 3-8-2-4 ........................................................................................................ 5

Iowa Code § 43.66 ......................................................................................................... 4

Kan. Stat. § 25-213 ........................................................................................................ 4

Kan. Stat. § 25-305 ........................................................................................................ 5

Ky. Rev. Stat. § 117.265 ................................................................................................ 5

Ky. Rev. Stat. § 118.215 ................................................................................................ 5

Mass. Gen. Laws ch. 53, § 40 ........................................................................................ 4

Md. Code, Elec. Law § 5-301 ........................................................................................ 5

Md. Code, Elec. Law § 5-303 ........................................................................................ 5

Md. Code, Elec. Law § 8-205 ..................................................................................... 5, 6

Me. Rev. Stat. tit. 21-A, § 722-A ................................................................................... 5

Me. Rev. Stat. tit. 21-A, § 723 ....................................................................................... 4

Mich. Comp. Laws § 168.582 ........................................................................................ 4

Mich. Comp. Laws § 168.737a ...................................................................................... 5

Minn. Stat. § 204B.09 .................................................................................................... 5

Mo. Stat. § 115.453 ........................................................................................................ 5

Mont. Code § 13-10-211 ................................................................................................ 5

N.C. Gen. Stat. § 163-123 .............................................................................................. 5

N.C. Gen. Stat. § 163-182.1 ........................................................................................... 6

N.D. Cent. Code § 16.1-11-36 ....................................................................................... 4

N.D. Cent. Code § 16.1-12-02.2 .................................................................................... 5

N.H. Rev. Stat. § 659:88 ................................................................................................... 4

N.J. Stat. § 19:14-2.1 ..................................................................................................... 4

N.M. Stat. § 1-13-24 ...................................................................................................... 4

N.Y. Elec. Law § 6-166 ................................................................................................. 5

Neb. Rev. Stat. § 32-615 ................................................................................................ 5

Nev. Rev. Stat. § 293.270 .............................................................................................. 6

Ohio Rev. Code § 3513.041 ........................................................................................... 5

Ohio Rev. Code § 3513.23 ............................................................................................. 4

Okla. Stat. tit. 26, § 7-127 .............................................................................................. 6

S.D. Codified Laws § 12-20-21.2 .................................................................................. 6

Tenn. Code § 2-5-219 .................................................................................................... 4

Tenn. Code § 2-7-133 .................................................................................................... 5

Tenn. Code § 2-8-113 ................................................................................................. 4, 5

Tex. Elec. Code § 146.025 ............................................................................................. 5

Tex. Elec. Code § 172.112 ............................................................................................. 6

Utah Code § 20A-9-601 ................................................................................................. 5

Vt. Stat. tit. 17, § 2370 ................................................................................................... 4

Vt. Stat. tit. 17, § 2682a ................................................................................................. 4

W. Va. Code § 3-6-4a .................................................................................................... 6

Wash. Rev. Code § 29A.24.311 ..................................................................................... 5

Wis. Stat. § 8.16 .......................................................................................................... 4, 6

Wyo. Stat. § 22-23-307 .................................................................................................. 4

Wyo. Stat. § 22-5-215 .................................................................................................... 4

**Other Authorities**

Berks County Data Hub, *Berks County Election Precinct Map: Lyons1* (Apr. 25, 2023) .................................................................................................................... 7

Lyons Borough Directory ................................................................................................ 7

Op. La. Att'y Gen. No. 91-0583 (Oct. 25, 1991).............................................................. 6

## INTEREST OF AMICI CURIAE[1]

Secretary of the Commonwealth Al Schmidt and the Pennsylvania Department of State file this amicus brief to aid the Court in its resolution of this matter and in support of the motion to dismiss filed by Defendant Berks County Board of Elections.

The Pennsylvania Department of State and the Secretary of the Commonwealth have a special interest in the interpretation of the Pennsylvania Election Code. The Department of State is Pennsylvania's state-level executive agency responsible for administering elections in the Commonwealth. 71 P.S. § 273. The Department of State is led by the Secretary of the Commonwealth, who is Pennsylvania's Chief Election Official and the foremost authority on Pennsylvania's elections. Among other obligations, the Secretary has the duty "[t]o receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast for candidates; to proclaim the results of such primaries and elections, and to issue certificates of election to the successful candidates at such elections." 25 P.S. § 2621(f); *see also id.* § 3159. The Department "shall have the power, and its duty shall be, to care for, compile, publish, and certify, returns of elections." 71 P.S. § 273.

As a result, the Department and the Secretary have a unique understanding of Pennsylvania's election administration and a unique statewide perspective on how elections are conducted in Pennsylvania. They are well-positioned to speak about the state interests implicated by 25 P.S. § 3155—especially because resolution of this matter could impact the conduct and administration of elections across the Commonwealth.

---

[1] No person or entity other than Amici and their counsel assisted in or made a monetary contribution to the preparation or submission of this brief.

1

# ARGUMENT

**I.     The Pennsylvania Election Code requires all political party nominees to meet a basic threshold indication of public support.**

The Pennsylvania Election Code governs the conduct and administration of elections in the Commonwealth, including the nomination of political party candidates at primary elections. 25 P.S. §§ 2861-2883. Under the Election Code, a political party is a political group that received votes above a certain threshold in the most recent general election. *Id.* § 2831(a). To maintain the status of a "major" political party (although the Election Code does not use that term), the party must receive over fifteen percent of the combined statewide registration for all statewide political parties as of the close of registration for the immediately preceding November election. *Id.* § 2872.2(a). The Democratic Party and the Republican Party are the only major political parties in Pennsylvania. Because minor political parties are not at issue here, Amici use the word "party" in this brief to refer to a "major" political party.

The Election Code directs how the Democratic and the Republican Parties nominate candidates to appear on the general election ballot. *Id.* § 2862. To get on the ballot for a primary election, a prospective candidate for party nomination must complete and file a nomination petition. *Id.* § 2867. This nomination petition must: (1) contain a minimum number of signatures, depending on the office, (2) be signed only by members of the respective political party, (3) be circulated in a three-week span ahead of the primary election, and (4) include on each sheet a signed statement by the circulator. *Id.* §§ 2868, 2869, 2872.1. Each prospective candidate for office must submit a separate set of signatures. *Id.* § 2868. Prospective candidates must also complete an affidavit swearing to their qualification for the role. *Id.* § 2870.

For the office of Mayor of Lyons Borough, a prospective candidate must obtain ten signatures to get on the primary ballot. *Id.* § 2872.1(36). The candidate on the ballot who receives a

2

plurality of votes in the primary will appear on the general election ballot as the party's nominee. *Id.* § 2882.

The Election Code also directs how county boards of elections should canvass write-in ballots, which the Code refers to as "irregular ballots." *Id.* § 3155. County boards are empowered to cumulate write-in votes for any person, provided that the county board can ascertain the voter's intent. *Appeal of McCracken*, 88 A.2d 787, 789 (Pa. 1952). But during a primary election, the county board and the Department "shall not certify the votes cast on irregular ballots for any person … unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office." 25 P.S. § 3155. This applies both to candidates for party nomination (who will appear on the general election ballot as that party's nominee for office) and to candidates for party office (who are elected at the primary).

For the office of Mayor of Lyons Borough, a prospective write-in nominee must obtain ten write-in votes to appear on the general election ballot as the party's nominee. *Id.* §§ 3155, 2872.1(36).

## II. Other states also require write-in candidates to meet certain requirements prior to certification.

Pennsylvania is not alone in requiring a write-in candidate to meet certain statutory requirements prior to certification. Based on the Department's research, it appears that 18 other states require write-in candidates to achieve a minimum number of votes to be certified as the winner of an election.[2]

---

[2] Ariz. Rev. Stat. § 16-645(c), (e) (write-in votes "equivalent to at least the same number of signatures required by § 16-322 for nominating petitions for the same office"); Colo. Rev. Stat. § 1-7-201(5) (write-in candidates "must receive at least the number of votes … required by § 1-4-801(2) to become designated as a candidate by petition"); Idaho Code § 34-702 (write-in candidates must receive an enumerated minimum number of votes, ranging from 5 to 1,000); 10 Ill. Comp. Stat. 5/7-59(c)(1) (subject to certain exceptions, write-in candidates must receive votes *(continued…)*

3

---

equal to "the number of signatures required on a petition for nomination for that office"); Iowa Code § 43.66 (write-in candidate must "receive[] a number of votes equal to at least thirty-five percent of the total vote cast for all of that party's candidates for that office in the last preceding primary election"); Kan. Stat. § 25-213(d) (write-in candidates must "receive[] votes equal in number to … 5% of the total of the current voter registration designated in the state, county or district in which the office is sought"); Me. Rev. Stat. tit. 21-A, § 723 (write-in candidate must receive "votes equal to at least twice the minimum number of signatures required … on a primary petition"); Mass. Gen. Laws ch. 53, § 40 (write-in candidate must "receive[] a number of votes at least equal to the number of signatures which would be required by law to place his name on the ballot"); Mich. Comp. Laws § 168.582 (write-in candidate in the primary must receive votes equal to the greater of (1) 0.15% of the district's last total census population, (2) 5% of the largest vote in the primary, or (3) 10 votes); N.H. Rev. Stat. § 659:88 (write-in candidate must receive the smaller of 35 votes or 10% of the total ballots cast in that party's primary); N.J. Stat. § 19:14-2.1 (must receive votes "equal to the number of signatures required on a petition to place [a candidate] upon the primary ballot"); N.M. Stat. § 1-13-24(c) (unopposed write-in candidate must receive "at least the number of write-in votes in the primary election as the write-in candidate would need for signatures on a nomination petition"); N.D. Cent. Code § 16.1-11-36 (must receive votes "equal to the number of signatures required on a petition" to be placed on the ballot); Ohio Rev. Code § 3513.23(b) (subject to exceptions, "total number of votes cast for" write-in candidates must equal "number of petition signatures … for the … primary ballot"); Tenn. Code §§ 2-5-219 (25 vote minimum for county or municipal office), 2-8-113(a) ("must receive a number of write-in votes equal to or greater than five percent (5%) of the total number of registered voters of the district" if no candidates are printed on the ballot); Vt. Stat. tit. 17, §§ 2370(b) (write-in candidate must "receive[] at least one-half the number of votes as the number of signatures required for the candidate's office on a primary petition," unless defeating a candidate printed on the ballot), 2682a (municipal candidates must "receive at least 30 votes or the votes of one percent of the registered voters in the municipality, whichever is less"); Wis. Stat. § 8.16(2) (write-in candidate must "receive[] at least 5 percent of the vote cast in the jurisdiction or district for the party's gubernatorial candidate at the last general election or the number of votes equivalent to the minimum number of signatures required on nomination papers … whichever is greater); Wyo. Stat. §§ 22-5-215 (write-in candidate must receive at least 25 votes to receive nomination), 22-23-307(a) (3 vote minimum for municipal elections).

4

In addition, 29 states require write-in candidates to file registrations or other paperwork ahead of election day[3]—an obligation not present in the Pennsylvania Election Code. Other states do not permit write-in votes during a primary election,[4] or at all.[5]

---

[3] Ariz. Rev. Stat. § 16-312(b) (nomination paper due 40 days before the election); Cal. Elec. Code §§ 8600, 8601 ("statement of write-in candidacy" due 14 days before the election); Colo. Rev. Stat. § 1-4-1102(1) ("affidavit of intent" due 67 days before a primary election); Conn. Gen. Stat. § 9-373a (write-in candidates must register write-in candidacy 14 days before a general election); Del. Code tit. 15, § 3402 ("Write-in Candidate Declaration" for a general election due September 20 before each general election); Fla. Stat. § 99.061(1), (4) (write-in candidates' "qualification papers" due 116 or 67 days before the primary, depending on the office); Ga. Code § 21-2-133 (general election write-in candidates' "intention of candidacy" due by first Monday in September); Idaho Code § 34-702A ("declaration of intent for write-in candidates … shall be filed" 11 eleven weeks or nine weeks before the primary election, depending on the office); 10 Ill. Comp. Stat. 17-16.1 ("notarized declarations of intent" due 61 days prior to the election); Ind. Code §§ 3-8-2-4 ("declaration of candidacy" due 88 days before a primary and 118 days before a general election), 3-8-2.5-4 (declaration due 74 days before general election for school board candidates); Kan. Stat. § 25-305 ("affidavit of write-in candidacy" due by 4th Monday prior to the election); Ky. Rev. Stat. §§ 117.265, 118.215 ("declaration of intent to be a write-in candidate" due three weeks after the filing deadline to appear on the primary ballot, and the 4th Monday in August before a general election); Me. Rev. Stat. tit. 21-A, § 722-A ("declaration of write-in candidacy" due 70 days before the election); Md. Code, Elec. Law §§ 5-301, 5-303(a), 8-205 ("certificate of candidacy" for the general election due 95 days before the primary or last Tuesday in February for a gubernatorial election year); Mich. Comp. Laws § 168.737a(1) ("declaration of intent to be a write-in candidate" due on the 2nd Friday before the election); Minn. Stat. § 204B.09(3) (request for counting of write-in votes due 85 days before the primary and 7 days before the general election); Mo. Stat. § 115.453(4) ("declaration of intent to be a write-in candidate" due the second Friday before the election); Mont. Code § 13-10-211(1) ("declaration of intent" due 90 days before the election); Neb. Rev. Stat. § 32-615(1) (affidavit of intent due by the second Friday before the election); N.Y. Elec. Law § 6-166 (candidate's "certificate of acceptance" of a "petition to ballot" due on the 4th day after the last day to file petitions before the primary) N.C. Gen. Stat. § 163-123(c) (petition for candidacy due 90 days before the general election and must be supported by 100 signatures of voters of the district); N.D. Cent. Code § 16.1-12-02.2 ("certificate of write-in candidacy" for certain offices to be filed between 4 and 21 days before the election); Ohio Rev. Code § 3513.041 ("declaration of intent to be a write-in candidate" due 72 days before the election); Tenn. Code §§ 2-7-133(h), 2-8-113(c) (request to count ballots due 50 days before the election); Tex. Elec. Code § 146.025 ("declaration of write-in candidacy due 78 days before a general election); Utah Code § 20A-9-601 (write-in "declaration of candidacy" due 65 days before a general election); Wash. Rev. Code § 29A.24.311(1) ("declaration of candidacy" due by 8:00 p.m. on the day of the election); W. Va. *(continued…)*

**III.     It is constitutional to require Mr. Pugh to get the same number of write-in votes at the primary election as signatures required for a nomination petition.**

Because Mr. Pugh did not file a nomination petition for the office of Lyons Borough Mayor with at least ten signatures, the Election Code required him to obtain ten write-in votes to be certified as winner of the Republican primary. Mr. Pugh argues that this requirement violates the First and Fourteenth Amendments to the U.S. Constitution because it denies him access to the general election ballot as the Republican Party's nominee and because it treats him differently than a candidate who appeared on the primary ballot via a nomination petition. But the statutory requirement—here, nine votes in addition to his own—is a modest but reasonable task that is more than justified by the Commonwealth's interests. And the threshold is less burdensome than the (still modest) requirements for a candidate to be listed on the primary ballot. As such, no constitutional violation exists.

1.     It is well established that First and Fourteenth Amendment challenges to ballot access regulations are adjudicated under the *Anderson-Burdick* balancing test. *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138-43 (3d Cir. 2022); *Rogers v. Corbett*, 468 F.3d 188, 193-94 (3d Cir. 2006).

---

Code § 3-6-4a(c)(1) ("write-in candidate's certificate of announcement" due 49 days before the election); Wis. Stat. § 8.16(2)(a) ("declaration of candidacy" due within 3 days after notification of nomination is provided to the candidate).

[4] Ala. Code § 17-6-28(a); Conn. Gen. Stat. § 9-377 ("No write-in spaces shall appear on the ballots used at a primary."); Ga. Code § 21-2-133 (" No person shall be eligible as a write-in candidate in a special or general primary[.]"); Md. Code, Elec. Law § 8-205 ("A voter may not cast a write-in vote in a primary election."); N.C. Gen. Stat. § 163-182.1(a)(6) ("Write-in votes shall not be counted in party primaries[.]"); 17 R.I. Gen. Laws § 17-19-31 ("no irregular ballots shall be counted at primaries[.]"); Tex. Elec. Code § 172.112 ("Write-in voting in a primary election is not permitted.").

[5] Ark. Code § 7-5-205; *Burdick v. Takushi*, 776 P.2d 824, 826 (Haw. 1989) ("write-in votes are not possible under [Hawaii's] statutory framework"); Op. La. Att'y Gen. No. 91-0583 (Oct. 25, 1991) ("since 1975 Louisiana election law has not provided for write-in candidates"), available at https://www.ag.state.la.us/Opinion/Download/91-0583; Nev. Rev. Stat. § 293.270(2); Okla. Stat. tit. 26, § 7-127(1); S.D. Codified Laws § 12-20-21.2.

Under this test, courts "consider what burden is placed on the rights which plaintiffs seek to assert and then [] balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiff's rights be burdened." *Rogers*, 468 F.3d at 194. More severe burdens must be justified by compelling state interests. *Id.* But if "a burden is not severe and imposes only reasonable, nondiscriminatory restrictions on constitutional rights," then "the State's important regulatory interests are generally sufficient to justify the restrictions." *Mazo*, 54 F.4th at 145-46 (cleaned up).

2.  Here, the burden imposed on Mr. Pugh was exceedingly modest: he had to obtain ten write-in votes for the office of Lyons Borough Mayor. He obtained six and chose to cumulate five. Compl. ¶¶ 22, 27 (ECF No. 1).[6] Mr. Pugh has pled no facts to explain why having to obtain nine votes in addition to his own posed a burden to him. At the time of the primary, Lyons Borough included 122 registered Republican voters, 41 of whom participated in the primary election. *Id.* ¶ 30. Lyons Borough is only 0.4 square miles. *Id.* ¶ 13. It has only one polling location. *See* Berks County Data Hub, *Berks County Election Precinct Map: Lyons1* (Apr. 25, 2023).[7] And Mr. Pugh is already a member of Lyons Borough Council. *See* Lyons Borough Directory.[8] As such, he is presumably well-known and connected in a likely tight-knit community.

Moreover, nothing prohibits Mr. Pugh from conducting a write-in campaign for the Lyons Borough mayorship in November's general election. During a general election, there is no corollary to 25 P.S. § 3155; "the persons receiving the highest number of votes for any office at any election shall be declared elected to such office." 25 P.S. § 3167. And unlike a primary election—

---

[6] Nothing prevented Mr. Pugh from seeking to cumulate the write-in vote for "Pugh." *See Dayhoff v. Weaver*, 808 A.2d 1002, 1011-12 (Pa. Cmwlth. Ct. 2002).

[7] https://opendata.berkspa.gov/documents/20b47f2dd5cb4702b4f72d8f339726a8/explore.

[8] https://www.server724.com/lyons/directory.html.

in which voters must be members of the relevant political party, *id.* § 2812—in the general election, Mr. Pugh can solicit and receive write-in support from all voters of Lyons Borough, regardless of their political affiliation.

3. This modest burden is weighed against the Commonwealth's interest in fair and orderly elections. The Commonwealth has the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)). Section 3155 of the Election Code "promotes 'equal' elections by requiring every candidate who desires to appear on the general electoral ballot to have satisfied the same condition—the show of support by a set number of people." *Shankey v. Staisey*, 257 A.2d 897, 899 (Pa. 1969). This reflects the General Assembly's intent that "a candidate should have to show" a "minimum of public support … before he deserved a spot on the ballot." *Id.*

For a prospective candidate seeking the Republican Party's nomination for office, this can be accomplished either through signatures on a nomination petition, 25 P.S. § 2872.1, or through the votes received at the primary, *id.* § 3155. *See Shankey*, 257 A.2d at 899. Either way, the number is the same.

Section 3155 also serves to prevent an end-run around the nomination petition process, which applies to all prospective party candidates who wish to appear on the primary ballot, no matter how small the office. 25 P.S. § 2867. The petition not only demonstrates public support, but also provides the Department and the county boards with basic administrative information and an affirmation that the prospective candidate is qualified to hold the office he is seeking. Nonetheless, so-called "empty primaries" are an occasional occurrence, especially in local elections.

Without § 3155, a prospective nominee might bypass the nomination petition process entirely, knowing that he needs fewer write-in votes than signatures to obtain party nomination.

These "important regulatory interests" justify the "reasonable, nondiscriminatory restriction[]" of requiring Mr. Pugh to obtain ten write-in votes. *See Mazo*, 54 F.4th at 145-46 (cleaned up).

4.  Nor is there an equal protection violation here. The Election Code does theoretically require Mr. Pugh to obtain more actual votes to be the certified nominee ("equal to or greater than the number of signatures required on a nomination petition for the particular office," 25 P.S. § 3155) than a primary candidate would have needed ("a plurality," *id.* § 2882). But that is only because the primary candidate would have already obtained ten signatures—and would have also complied with the other nomination requirements, including filing a candidate affidavit and preparing the nomination petition during the allotted three-week window. *See supra* at 2. That the paths to party nomination are different does not make that difference unconstitutional.

5.  Finally, to the extent Mr. Pugh seeks to vindicate purported harms he believes the Republican Party has suffered, such as the inability to fill a vacancy on a party ticket if no person was nominated at the primary, he lacks standing to do so. *Cf. California Democratic Party v. Jones*, 530 U.S. 567, 571 (2000) (challenge brought by four political parties); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 211 (1986) (challenge brought by political party, the party's federal officeholders, and the party's state chairman). Mr. Pugh does not represent the interests of the Republican Party and so cannot claim to have suffered a legally cognizable injury attributable only to party interests. Moreover, the Republican Party can hardly assert legal injury from the inability to fill a vacancy created by the Party's own decision not to run a candidate in an otherwise uncontested primary.

9

## CONCLUSION

For the reasons described above, the Court should grant the motion to dismiss filed by Berks County Board of Elections.

| | |
|---|---|
| July 18, 2025 | Respectfully submitted, |
| | |
| Carolyn DeLaurentis (No. 307018) | Jennifer Selber (No. 80644) |
| Chief Counsel | General Counsel |
| Kathleen A. Mullen (No. 84604) | |
| Executive Deputy Chief Counsel | */s Aimee D. Thomson* |
| Pennsylvania Department of State | Aimee D. Thomson (No. 326328) |
| 306 North Office Bldg. | Deputy General Counsel |
| 401 North Street | Office of General Counsel |
| Harrisburg, PA 17120-0500 | 30 N. 3rd St., Suite 200 |
| | Harrisburg, PA 17101 |
| | (223) 234-4986 |
| | aimeethomson@pa.gov |

*Counsel for Amici Curiae Secretary of the Commonwealth Al Schmidt &
Pennsylvania Department of State*

## CERTIFICATE OF SERVICE

      I, Aimee D. Thomson, certify that I have caused all parties to be served on this date with the foregoing via the Court's ECF system.

| | |
|---|---|
| Date: July 18, 2025 | /s/ *Aimee D. Thomson* <br> Aimee D. Thomson |